# THOMPSON *v.* THOMPSON.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 17.   Argued October 27, 1910.—Decided December 12, 1910.

At common law husband and wife were regarded as one, the legal existence of the latter during coverture being merged in that of the former.

Statutes passed in pursuance of a more liberal and general policy of emancipation of the wife from the husband's control differ in terms and each must be construed with a view to effectuate the legislative intent leading to its enactment.

In construing a statute the courts must have in mind the old law and the change intended to be effected by the passage of the new.

While by § 1155 and other sections of the Code of the District of Columbia the common law was changed by conferring additional rights on married women and the right to sue separately for redress of wrongs concerning the same, it was not the intention of Congress to revolutionize the law governing the relation of husband and wife between themselves.

Under the existing statutes, a wife cannot maintain an action in the District of Columbia against the husband to recover damages for an assault and battery by him upon her person.

While the wife may resort to the Chancery Court to protect her separate property rights, *quære,* and not decided, whether she alone may bring an action against the husband to protect such rights.

31 App. D. C. 557, affirmed.

THE facts, which involve the right of a wife to maintain an action in the District of Columbia against her husband to recover damages for an assault and battery, are stated in the opinion.

*Mr. Wm. M. Lewin* for plaintiff in error:

Prior to the enactment of the Code it was a tort for a man to assault his wife. The provisions of the Code remove a common-law obstacle to the remedy. *Stewart* v. *Railroad Co.,* 168 U. S. 445.

These provisions will be liberally construed, for it is the duty of every State to provide, in the administration of justice, for the redress of private wrongs; if there be a civil right there must be a legal remedy. *Railway Co.* v. *Humes*, 115 U. S. 512, 521; *Bank* v. *Owens*, 2 Pet. 527, 539. And protection against tort is as necessary as the enforcement of contract. *Wills* v. *Jones*, 13 App. D. C. 482, 497.

As redress cannot be obtained in equity, because of the essential character of the case, the rule is settled that the remedy must be by a suit at law. *Van Norden* v. *Morton*, 99 U. S. 378, 380. The reasoning of the New York case upon which the Court of Appeals relies has long since been repudiated. *Freethy* v. *Freethy*, 42 Barb. (N. Y.) 641; see *Bronson* v. *Bradey*, 28 App. D. C. 250, 262; *Stickney* v. *Stickney*, 131 U. S. 227, 237.

A statute will not be so construed that remote inferences withdraw a case from its general provisions which is clearly within its words and perfectly consistent with its intent. *Railroad Co.* v. *Church*, 19 Wall. 62, 65; *Bryan* v. *Kennett*, 113 U. S. 179, 196; *Market Co.* v. *Hoffman*, 101 U. S. 112, 115, 116.

As to the wife's general right to convey, see *Luhrs* v. *Hancock*, 181 U. S. 567, 571. Construction broadens with legislation and as to broadening rights of a married woman, see 16 Stat. 45; Rev. Stat. Dist. of Col., §§ 727, 729; *Seitz* v. *Mitchell*, 94 U. S. 580, 584.

By the Code not only are her earnings her own property absolutely, §§ 1151, 1154, but she is permitted to hold them as fully as if she were unmarried, and, § 1155, to sue for their recovery, security, or protection, but, § 1155, she is also empowered to sue for torts committed against her as fully and freely as if she were unmarried.

A change in phraseology creates a presumption of a change in intent, and no word of the change should be held insignificant. *Crawford* v. *Burke*, 195 U. S. 176, 190; *Market Co.* v. *Hoffman*, 101 U. S. 115, 116.

Even under the act of 1869 a wife could contract with: her husband. *Sykes* v. *Chadwick*, 18 Wall. 141, 143, 148.

And now she may sue him, even in tort, for that construction·will be followed which commends itself to the· judgment of the court. *May* v. *May*, 9 Nebraska, 16, 25; *Rice* v. *Sally*, 176 Missouri, 107, 130, 131; *Covlam* v. *Doull*, 133 U. S. 216, 233.

The right to her earnings necessarily implies the right to maintain her capacity to earn. The right to sue anyone, the husband not excepted, for impairment of that capacity is incidental thereto. *Traer* v. *Clews*, 115 U. S. 528, 540; *Seybert* v. *Pittsburg*, 1 Wall. 272.

This would follow from the construction of § 1151 in. *pari materia* with § 1155. · *Tel. Co.* v. *Lipscomb*, 22 App. D. C. 104, 113, 114; *Asphalt Co.* v. *Mackey*, 15 App. D. C. 410, 417; *Stickney* v. *Stickney*, 131 U. S. 227, 237.

Her capacity to earn is her own, and for its impairment she may recover. Evidence of such impairment is admissible under the declaration in this case. She is therefore entitled to a trial upon the merits. *Railway Co.* v. *Humble*, 181 U. S. 57, 63; *Hamilton* v. *Railroad Co.*, 17 Montana, 334, 352; *Railway Co.* v. *Harris*, 122 U. S. 597, 608; *Harmon* v. *Railroad Co.*, 165 Massachusetts, 100, 104; *Pomerene* v. *White*, 70 Nebraska, 171, 176; *Railroad Co.* v. *Kremple*, 103 Ill. App. 1; *Brooks* v. *Schwerin*, 54 N. Y. 343, 349; *Wade* v. *Leroy*, 20 How. 34, 44; *Railroad Co.* v. *Dick*, 78 S. W. Rep. (Ky.) 914; *Samuels* v. *Railway Co.*, 124 California, 294; *Railroad Co.* v. *Hecht*, 115 Indiana, 443, 446.

The Court of Appeals bases its conclusion upon the proposition that the parties are one in law. The court had previously said that that was the feudal notion and not the Christian notion. *Carroll* v. *Reidy*, 5 App. D. C. 59, 62; and see also *Bronson* v. *Brady*, 28 App. D. C. 250, 263.

*Mr. A. E. I. Leckie, Mr. Creed M. Fulton, Mr. Joseph W. Cox* and *Mr. John A. Kratz,* submitted for defendants in error and cited: 21 Cyc. 1517, 1518; § 450, N. Y. Code of Civ. Pro.; § 3, N. Y. Stat. of 1862; *Alward* v. *Alward,* 2 N. Y. Supp. 42; *Smith* v. *Gorman,* 41 Maine, 405, 408; *Small* v. *Small,* 129 Pa. St. 366; *Larison* v. *Larison,* 9 Ill. App. 27, 31; *Jones* v. *Jones,* 19 Iowa, 236; *Greer* v. *Greer,* 24 Kansas, 101; *Manning* v. *Manning,* 79 N. Car. 293; Iowa Code, 1873, §§ 2204, 2211; *Peters* v. *Peters,* 42 Iowa, 182; *Heacock* v. *Heacock,* 108 Iowa, 540; *Decker* v. *Kedley,* 148 Fed. Rep. 681; *Main* v. *Main,* 46 Ill. App. 106; *Libbey* v. *Berry,* 74 Maine, 286; *Abbott* v. *Abbott,* 67 Maine, 304; *Freethy* v. *Freethy,* 42 Barb. (N. Y.) 641; *Abbe* v. *Abbe,* 22 App. Div. 483; *Strom* v. *Strom,* 98 Minnesota, 427.

MR. JUSTICE DAY delivered the opinion of the court.

This case presents a single question, which is involved in the construction of the statutes governing the District of Columbia. That question is, Under those statutes may a wife bring an action to recover damages for an assault and battery upon her person by the husband?

The declaration of the plaintiff is in the ordinary form, and in seven counts charges divers assaults upon her person by her husband, the defendant, for which the wife seeks to recover damages in the sum of $70,000. An issue of law being made by demurrer to the defendant's pleas, the Supreme Court of the District of Columbia held that such action would not lie under the statute. Upon writ of error to the Court of Appeals of the District of Columbia the judgment of the Supreme Court was affirmed. 31 App. D. C. 557.

At the common law the husband and wife were regarded as one. The legal existence of the wife during coverture was merged in that of the husband, and, generally speaking, the wife was incapable of making contracts, of ac-

quiring property or disposing of the same without her husband's consent. They could not enter into contracts with each other, nor were they liable for torts committed by one against the other. In pursuance of a more liberal policy in favor of the wife, statutes have been passed in many of the States looking to the relief of a married woman from the disabilities imposed upon her as a femme covert by the common law. Under these laws she has been empowered to control and dispose of her own property free from the constraint of the husband, in many instances to carry on trade and business, and to deal with third persons as though she were a single woman. The wife has further been enabled by the passage of such statutes to sue for trespass upon her rights in property and to protect the security of her person against the wrongs and assaults of others.

It is unnecessary to review these statutes in detail. Their obvious purpose is, in some respects, to treat the wife as a femme sole, and to a large extent to alter the common law theory of the unity of husband and wife. These statutes, passed in pursuance of the general policy of emancipation of the wife from the husband's control, differ in terms and are to be construed with a view to effectuate the legislative purpose which led to their enactment.

It is insisted that the Code of the District of Columbia has gone so far in the direction of modifying the common law relation of husband and wife as to give to her an action against him for torts committed by him upon her person or property. The answer to this contention depends upon a construction of § 1155 of the District of Columbia Code, 31 Stat. 1189, 1374, March 3, 1901. That section provides:

"SEC. 1155. Power of Wife to Trade and Sue and be Sued.—Married women shall have power to engage in any business, and to contract, whether engaged in business or not, and to sue separately upon their contracts, and also

to sue separately for the recovery, security, or protection
of their property, and for torts committed against them,
as fully and freely as if they were unmarried; contracts
may also be made with them, and they may also be sued
separately upon their contracts, whether made before or
during marriage, and for wrongs independent of contract
committed by them before or during their marriage, as
fully as if they were unmarried, and upon judgments re-
covered against them execution may be issued as if they
were unmarried; nor shall any husband be liable upon
any contract made by his wife in her own name and upon
her own responsibility, nor for any tort committed sepa-
rately by her out of his presence without his participation
or sanction: Provided, That no married woman shall have
power to make any contract as surety or guarantor, or
as accommodation drawer, acceptor, maker, or indorser."

In construing a statute the courts are to have in mind
the old law and the change intended to be effected by the
passage of the new. Reading this section, it is apparent
that its purposes, among others, were to enable a married
woman to engage in business and to make contracts free
from the intervention or control of the husband, and to
maintain actions separately for the recovery, security and
protection of her property. At the common law, with
certain exceptions not necessary to notice in this connec-
tion, the wife could not maintain an action at law except
she be joined by her husband. *Barber* v. *Barber*, 21 How.
582, 589. For injuries suffered by the wife in her person
or property, such as would give rise to a cause of action in
favor of a femme sole, a suit could be instituted only in
the joint name of herself and husband. 1 Cooley on
Torts, 3d edition, 472, and cases cited in the note.

By this District of Columbia statute the common law
was changed, and, in view of the additional rights con-
ferred upon married women in § 1155 and other sections
of the Code, she is given the right to sue *separately* for

redress of wrongs concerning the same. That this was the purpose of the statute, when attention is given to the very question under consideration, is apparent from the consideration of its terms. Married women are authorized to sue separately for "the recovery, security or protection of their property, and for torts committed against her as fully and freely as if she were unmarried." That is, the limitation upon her right of action imposed in the requirement of the common law that the husband should join her was removed by the statute, and she was permitted to recover separately for such torts, as freely as if she were still unmarried. The statute was not intended to give a right of action as against the husband, but to allow the wife, in her own name, to maintain actions of tort which at common law must be brought in the joint names of herself and husband.

This construction we think is obvious from a reading of the statute in the light of the purpose sought to be accomplished. It gives a reasonable effect to the terms used, and accomplishes, as we believe, the legislative intent, which is the primary object of all construction of statutes.

It is suggested that the liberal construction insisted for in behalf of the defendant in error in this case might well be given, in view of the legislative intent to provide remedies for grievous wrongs to the wife; and an instance is suggested in the wrong to a wife rendered unable to follow the avocation of a seamstress by a cruel assault which might destroy the use of hand or arm; and the justice is suggested of giving a remedy to an artist who might be maimed and suffer great pecuniary damages as the result of injuries inflicted by a brutal husband.

Apart from the consideration that the perpetration of such atrocious wrongs affords adequate grounds for relief under the statutes of divorce and alimony, this construction would at the same time open the doors of the courts to accusations of all sorts of one spouse against the other,

and bring into public notice complaints for assault, slander and libel, and alleged injuries to property of the one or the other, by husband against wife or wife against husband. Whether the exercise of such jurisdiction would be promotive of the public welfare and domestic harmony is at least a debatable question. The possible evils of such legislation might well make the lawmaking power hesitate to enact it. But these and kindred considerations are addressed to the legislative, not the judicial branch of the Government. In cases like the present, interpretation of the law is the only function of the courts.

An examination of this class of legislation will show that it has gone much further in the direction of giving rights to the wife in the management and control of her separate property than it has in giving rights of action directly against the husband. In no act called to our attention has the right of the wife been carried to the extent of opening the courts to complaints of the character of the one here involved.

It must be presumed that the legislators who enacted this statute were familiar with the long-established policy of the common law, and were not unmindful of the radical changes in the policy of centuries which such legislation as is here suggested would bring about. Conceding it to be within the power of the legislature to make this alteration in the law, if it saw fit to do so, nevertheless such radical and far-reaching changes should only be wrought by language so clear and plain as to be unmistakable evidence of the legislative intention. Had it been the legislative purpose not only to permit the wife to bring suits free from her husband's participation and control, but to bring actions against him also for injuries to person or property as though they were strangers, thus emphasizing and publishing differences which otherwise might not be serious, it would have been easy to have expressed that intent in terms of irresistible clearness.

We can but regard this case as another of many attempts which have failed, to obtain by construction radical and far-reaching changes in the policy of the common law not declared in the terms of the legislation under consideration.

Some of the cases of that character are: *Bandfield* v. *Bandfield,* 117· Michigan, 80; *Abbott* v. *Abbott,* 67 Maine, 304; *Schultz* v. *Schultz,* 89 N. Y. 644; *Freethy* v. *Freethy,* 42 Barbour, 641; *Peters* v. *Peters,* 42 Iowa, 182.

Nor is the wife left without remedy for such wrongs. She may resort to the criminal courts, which, it is to be presumed, will inflict punishment commensurate with the offense committed. She may sue for divorce or separation and for alimony. The court in protecting her rights and awarding relief in such cases may consider, and, so far as possible, redress her wrongs and protect her rights.

She may resort to the chancery court for the protection of her separate property rights. 21 How. 582, 590. Whether the wife alone may now bring actions against the husband to protect her separate property, such as are cognizable in a suit in equity when brought through the medium of a next friend (21 How., *supra*), is a question not made or decided in this case.

We do not believe it was the intention of Congress, in the enactment of the District of Columbia Code, to revolutionize the law governing the relation of husband and wife as between themselves. We·think the construction we have given the statute is in harmony with its language and is the only one consistent with its purpose.

The judgment of the Court of Appeals of the District of Columbia will be

*Affirmed.*

MR. JUSTICE HARLAN, with whom concur MR. JUSTICE HOLMES and MR. JUSTICE HUGHES. dissenting.

This is an action by a wife against her husband to recover damages for assault and battery. The declaration

contains seven counts.  The first, second and third charge assault by the husband upon the wife on three several days.  The remaining counts charge assaults by him upon her on different days named—she being at the time preg-nant, as the husband then well knew.

The defendant filed two pleas—the first that he was not guilty, the second that, at the time of the causes of action mentioned, the plaintiff and defendant were hus-band and wife and living together as such.

The plaintiff demurred to the second plea, and the demurrer was overruled.  She stood by the demurrer, and the action was dismissed.

The action is based upon §§ 1151 and 1155 of the Code of the District, which are as follows:

"SEC. 1151.  All the property, real, personal, and mixed, belonging to a woman at the time of her marriage, and all such property which she may acquire or receive after her marriage from any person whomsoever, by purchase, gift, grant, devise, bequest, descent, in the course of dis-tribution, by her own skill, labor, or personal exertions, or as proceeds of a judgment at law or decree in equity, or in any other manner, shall be *her own property as abso-lutely as if she were unmarried,* and shall be protected from the debts of the husband and shall not in any way be liable for the payment thereof: *Provided,* That no acquisition of property passing to the wife from the husband after coverture shall be valid if the same has been made or granted to her in prejudice of the rights of his subsisting creditors.

"SEC. 1155.  Married women shall have power to en-gage in *any* business, and to contract, whether engaged in business or not, and to sue separately upon their con-tracts, and *also* to sue separately for the recovery, security or protection of their property, *and* for torts committed against them, *as fully and freely as if they were unmarried;* contracts may also be made with them, and they may

also be sued separately upon their contracts, whether made before or during marriage, and for wrongs independent of contract committed by them before or during their marriage, as fully as if they were unmarried, and upon judgments recovered against them execution may be issued as if they were unmarried; nor shall any husband be liable upon any contract made by his wife in her own name and upon her own responsibility, nor for any tort committed separately by her out of his presence without his participation or sanction: *Provided,* That no married woman shall have power to make any contract as surety or as guarantor, or as accommodation drawer, acceptor, maker or indorser."

The court below held that these provisions did not authorize an action for *tort* committed by the husband against the wife.

In my opinion these statutory provisions, properly construed, embrace such a case as the present one. If the words used by Congress lead to such a result, and if, as suggested, that result be undesirable on grounds of public policy, it is not within the functions of the court to ward off the dangers feared or the evils threatened simply by a judicial construction that will defeat the plainly-expressed will of the legislative department. With the mere policy, expediency or justice of legislation the courts, in our system of government, have no rightful concern. Their duty is only to declare what the law is, not what, in their judgment, it ought to be—leaving the responsibility for legislation where it exclusively belongs, that is, with the legislative department, so long as it keeps within constitutional limits. Now, there is not here, as I think, any room whatever for mere construction—so explicit are the words of Congress. Let us follow the clauses of the statute in their order. The statute enables the married woman to take, as her own, property of any kind, no matter how acquired by her, as well as the avails of

her skill, labor or personal exertions, "as absolutely as *if she were unmarried.*" It then confers upon married women the power to engage in any business, no matter what, and to enter into contracts, whether engaged in business or not, and to sue separately upon those contracts. If the statute stopped here, there would be ground for holding that it did not authorize this suit. But the statute goes much farther. It proceeds to authorize married women "also" to sue separately for the recovery, security or protection of their property; still more, they may sue, separately, "for *torts* committed against *them,* as fully and freely *as if they were unmarried.*" No discrimination is made, in either case, between the persons charged with committing the tort. No exception is made in reference to the husband, if he happens to be the party charged with transgressing the rights conferred upon the wife by the statute. In other words, Congress, by these statutory provisions, destroys the unity of the marriage association as it had previously existed. It makes a radical change in the relations of man and wife as those relations were at common law in this District. In respect of business and property the married woman is given absolute control; in respect of the recovery, security and protection of her property, she may sue, separately, in *tort,* as if she was unmarried; and in respect of herself, that is, of her person, she may sue, separately, as fully and freely, as if she were unmarried, "for *torts* committed *against her.*" So the statute expressly reads. But my brethren think that notwithstanding the destruction by the statute of the unity of the married relation, it could not have been intended to open the doors of the courts to accusations of all sorts by husband and wife against each other; and, therefore, they are moved to add, by construction, to the provision that married women may "sue separately . . . for torts committed against them as fully and freely as if they were unmarried" these words: "Provided, however, that

the wife shall *not* be entitled, in any case, to sue her husband separately for a tort committed *against her person.*" If the husband violently takes possession of his wife's property and withholds it from her she may, *under the statute,* sue him, separately, for its recovery. But such a civil action will be one in tort. If he injures or destroys her property she may, *under the statute,* sue him, separately, for damages. That action would also be one in tort. If these propositions are disputed, what becomes of the words in the statute to the effect that she may "sue separately for the recovery, security and protection" of her property? But if they are conceded—as I think they must be—then Congress, under the construction now placed by the court on the statute, is put in the anomalous position of allowing a married woman to sue her husband separately, in tort, for the recovery of her property, but denying her the right or privilege to sue him separately, in tort, for damages arising from his brutal assaults upon her person. I will not assume that Congress intended to bring about any such result. I cannot believe that it intended to permit the wife to sue the husband separately, in tort, for the recovery, including damages for the detention, of her property, and at the same time deny her the right to sue him, separately, for a tort committed against her person.

I repeat that with the policy, wisdom or, justice of the legislation in question this court can have no rightful concern. It must take the law as it has been established by competent legislative authority. It cannot, in any legal sense, make law, but only declare what the law is, as established by competent authority.

My brethren feel constrained to say that the present case illustrates the attempt, often made, to effect radical changes in the common law by mere construction. On the contrary, the judgment just rendered will have, as I think, the effect to defeat the clearly expressed will of

the legislature by a construction of its words that cannot be reconciled with their ordinary meaning.

I dissent from the opinion and judgment of the court, and am authorized to say that MR. JUSTICE HOLMES and MR. JUSTICE HUGHES concur in this dissent.