**Mileos E. TURNER, Appellant,**

v.

**Elnora TAYLOR, Appellee.**

**No. 82–1601.**

District of Columbia Court of Appeals.

Submitted Oct. 26, 1983.

Decided Feb. 2, 1984.

---

Dennis M. McHugh, Frederick, Md., was on brief for appellant.

Jan L. Jacobowitz, Washington, D.C., was on brief for appellee.

Before KERN, MACK and TERRY, Associate Judges.

TERRY, Associate Judge:

After granting appellant Turner a divorce, the trial court ordered him to pay $1,430 to his ex-wife, appellee Taylor, in compensation for personal property which it found that he had destroyed during their marriage. Turner appeals from this order. Because we agree with appellant that the court had no authority to make such a monetary award, we reverse.

The parties were married in June 1974. According to appellee's testimony, she and appellant lived together in her home until one day in August or September of the same year. That day, her brother testified, he came into the house and found appellee's living room furniture "cut up." When he went upstairs to the bedroom, he discovered appellant pulling appellee's clothes out of the closet. Some of the bedroom furniture was also cut. Appellant then left the house with some of his wife's clothes; when he

returned some time later, he appeared to have been drinking. Appellee came home from work that night and found her husband in a jealous rage. The bedroom was a shambles; "[e]verything in my bedroom that was mine, clothes and all, was [torn] up." [1] Appellee testified that appellant destroyed her bedroom furniture, worth $675 to $700, her clothing, worth nearly $1,000, and her linens, worth $175 to $180. Even after this incident, however, she and appellant lived together intermittently until 1976, when they stopped seeing each other. Appellee told the court that she had not brought an earlier action on her claim for destruction of property because she was afraid; she had also assumed that it would be settled in the divorce proceeding.

Appellant, on the other hand, testified that he and appellee lived together for only a few days after their marriage; thereafter they never again cohabited or had sexual relations. He denied ever having destroyed any of appellee's property; rather, he claimed, he "was in there adjusting stuff, the bedroom was already in ramshackle." Yet he also testified later in the trial that he never saw appellee's room in disarray. According to appellant, he and her brother were painting the bedroom at the time without her permission, which made her angry. But he also testified that he did not see her brother on the day of the incident, which, according to appellant, never took place.

Appellant eventually brought an action for divorce in August 1981, about seven years after the alleged incident in the bedroom. Appellee's answer included a counterclaim against appellant for $2,000, evidently for the destroyed property. The trial court granted the divorce. Further, finding that appellant had "deliberately and purposely" destroyed his wife's property, the court awarded appellee $750 for the clothing, $500 for the furniture, and $180 for the linens, a total of $1,430.

---

1. Appellant explained his actions by accusing    his wife of "running around."

Appellant contends that the trial court's award was beyond its authority to grant; alternatively, he contends that the court's findings which prompted the award were unsupported by the evidence. We agree with the first argument, and thus we do not reach the second.

▐ This court has not addressed the question of whether, in the course of distributing property in a divorce proceeding, a court may award payment in lieu of property destroyed. Clearly, a trial court enjoys wide discretion in the distribution of most property acquired by either spouse during the marriage. But since D.C.Code § 16–910 (1981) carefully limits the types of property over which the court may exercise this discretion, it is not up to the court to determine what property it may distribute. If the court in a divorce action has the power to order payment for lost or damaged property, that power must be granted by the statute. It is nowhere to be found there.

▐ Section 16–910 controls the distribution of property in a divorce proceeding. It states that, upon entering a divorce decree, the court shall

(a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent, and any increase thereof, or property acquired in exchange therefor; and

(b) distribute all other property accumulated during the marriage, regardless

of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable....

Subsection (b) goes on to list several factors to be considered in deciding how to distribute property acquired during the marriage. Subsection (a), however, affords no such latitude for the distribution of property acquired by either spouse before the marriage, or property acquired by gift or inheritance; such items remain inviolably the property of their original owner.

Both subsections, moreover, deal only with property in existence at the time of the divorce decree; neither states that the court may order payment in lieu of property destroyed. Nor does either suggest, even implicitly, that one spouse's right to compensation for property destroyed by the other spouse may be treated as an asset, in the nature of a chose in action, subject to distribution by the court. While subsection (b) states that the court "shall also consider each party's contribution to the ... dissipation ... of the assets subject to distribution under this subsection," this admonition concerns the apportionment of actual, existing property; it does not authorize recovery for lost or damaged property.[2]

We therefore hold that the trial court exceeded its authority in awarding $1,430 to appellee in compensation for her property which appellant allegedly destroyed some seven years before commencement of the action for divorce.[3] That portion of its

---

2. Nor can the court's monetary award in this case be sustained as a judgment on a counterclaim sounding in tort. At common law one spouse was immune from liability for a tort committed against the other spouse. *See Mountjoy v. Mountjoy,* 206 A.2d 733 (D.C.), *appeal denied,* 121 U.S.App.D.C. 27, 347 F.2d 811 (1965). Interspousal immunity, however, was abolished in the District of Columbia by statute in 1976. D.C.Code § 30–201 (1981). We need not decide what the effect of that statute would be on a claim by a wife against a husband for a tort committed in 1974 if an action were filed after the statute's 1976 effective date. Assuming that appellee could have brought an action for damages against appellant, she chose not to do so. Since no such

action was ever filed, her claim is now barred by the three-year statute of limitations. D.C. Code § 12–301(3) (1981).

Likewise, we do not decide whether a claim for destruction of property not barred by the statute of limitations, or for that matter any interspousal tort claim, may be presented as a counterclaim in a divorce proceeding.

3. In so holding we do not imply that a court is without power to impose sanctions if property is destroyed by either spouse after the commencement of a divorce action. On the contrary, the court's contempt power, as well as its inherent authority as a court of equity, would surely provide it with sufficient means to deal

judgment is accordingly reversed. The remainder of the trial court's judgment, which granted to appellant a divorce from appellee and imposed certain other conditions on both parties, being unchallenged by either party, is affirmed.

*Affirmed in part, reversed in part.*

with such conduct by a party over whom it      already has jurisdiction.